Merrimack, }
Nov. 7, 1905. }

## CURTICE, *Adm'r*, *v.* DIXON.

In an equitable proceeding for the cancellation of a written contract, by which the defendant is alleged to have obtained property through fraud and imposition practiced upon a person of unsound mind, there is no constitutional right to a trial by jury.

BILL IN EQUITY, praying for a cancellation of a written contract by which it is alleged that the defendant obtained a large amount of property through fraud and imposition practiced by her upon the plaintiff's intestate, who was of unsound mind by reason of age and infirmity. The bill also asks for an accounting. The defendant filed an answer denying the allegation of fraud and imposition, and moved that issues be framed for a trial by jury. The court denied the motion, and the defendant excepted. Transferred from the April term, 1905, of the superior court by *Chamberlin*, J.

*Streeter & Hollis* and *Matthews & Sawyer*, for the plaintiff.

*Martin & Howe* and *Sargent, Remick & Niles*, for the defendant.

WALKER, J. The defendant's motion raises the question, whether upon the cause of action alleged in the plaintiff's bill she has a constitutional right to a trial by jury. It is admitted in the argument in support of the motion, that if the subject-matter of the suit or the peculiar relief sought, as disclosed in the bill, is within the exclusive jurisdiction of equity, a jury trial cannot be had as a matter of substantive right; but it is urged that if the jurisdiction in these respects is concurrent with that at law, issues of fact must be framed for trial by jury upon motion. But it does not appear to be necessary to decide this somewhat novel question; for there can be little doubt that the plaintiff has stated a case falling within the exclusive cognizance of equity.

Briefly stated, the allegations are that the defendant, by means of fraud and undue influence practiced upon the deceased, who was by reason of age mentally incapacitated from doing business, induced him to execute a written contract with her, by virtue of which she obtained from him a large sum of money and a bank-book representing several thousand dollars. It is also alleged that by the same means she obtained from him a deed of certain real estate. Assuming the truth of these allegations, it would follow that the

beneficial title to the property referred to remained in the deceased, and that the defendant held the same during the lifetime of the deceased upon a constructive trust for his benefit and since his decease for the use of his estate.   Upon such a state of facts, it is the peculiar province of equity to safeguard the rights of the defrauded party, upon the ground that no contract was in fact made and that the possession of the property by the guilty party creates a trust by legal implication, for the benefit of the unfortunate owner.   "Equity watches with jealous care every attempt to deal with persons of unsound mind; and when from the nature of the transaction there is not evidence of entire good faith, or the undertaking is not seen to be just in itself, or for their benefit, it is set aside, or made subservient to their just rights and interests. . . . The same doctrine has been applied to persons of weak understanding though not *non compos* strictly, yet unable to guard themselves against imposition, or to resist importunity or undue influence."  *Roberts* v. *Barker*, 63 N. H. 332, 334.

If, as is claimed, the defendant is holding property under and by virtue of the written contract, obtained by her by fraudulently taking advantage of the mental weakness of the deceased, equity may require the cancellation and surrender of the document and an accounting.   The mere fact that an action at law for damages occasioned by the fraud might be maintained does not deprive equity of its otherwise exclusive jurisdiction.   "Even when the controversy is concerning pecuniary claims and obligations, and the final relief is wholly pecuniary, the equitable remedies are administered by regarding the subject-matter as a specific fund and by adjudging such fund to its single owner." 1 Pom. Eq. Jur., *s.* 170.   See, also, *Ib.*, *ss.* 138, 140, note 1; 1 Per. Tr., *s.* 166.

It is plain from the case presented in the bill that the defendant has no constitutional right to have issues framed for trial by a jury.   *State* v. *Saunders*, 66 N. H. 39; *Parker* v. *Simpson*, 180 Mass. 334, 355.   Whether some of the issues presented by the bill and answer are properly triable by a jury may not be open to serious doubt (*State* v. *Saunders, supra*), but the absolute right to such a trial, as insisted upon by the defendant, does not exist.

*Exception overruled.*

All concurred.