Coös,
Nov. 2, 1909.

### GENEST *v.* ODELL MANUFACTURING CO.

The order in which issues shall be disposed of is a matter determinable by the trial court.

A conclusion by the trial court, that all issues of fact raised by a suit at law and a proceeding in equity between the same parties should be tried together by a jury, is not subject to review.

Where a master has entrusted to a servant the duty of deciding what dangerous places should be guarded, the question whether directions given the latter were as explicit and definite as the circumstances required is for the jury.

The failure of a plaintiff to return money paid to him in consideration of a release of his claim is not fatal to his right of recovery, if a general verdict in his favor necessarily includes a finding that no valid settlement was made.

The fact that a witness has been convicted of the offence of drunkenness cannot be used for the purpose of discrediting him.

As against a stranger to the record, a judgment is not evidence of the facts in issue between the parties to it.

An admission by a witness, not made as a part of his testimony, is not competent evidence of the admitted fact, as against the party for whom he testifies.

CASE, for personal injuries suffered by Charles Genest while employed in the defendants' mill. The plaintiff in interest was confined in the asylum for the insane when the suit was brought and at the time of the trial, and the action is prosecuted by his wife as next friend. The defendants pleaded a release and later filed a bill in equity against Genest and his wife, setting up the release and alleging fraud in the prosecution of the suit. The defendants' motion for separate trials of the cases was denied, and they excepted. A copy of the bill was then filed as an answer in the suit at law, and the defendants' motion that the issues thus raised be first determined was denied, subject to their exception. The question of discretion was not reserved. The issues were all submitted to the jury, and there was a verdict for the plaintiff. Transferred from the September term, 1908, of the superior court by *Chamberlin*, J.

The evidence tended to prove that a trap-door in the floor of the defendants' mill was left unguarded by those who opened it, that the place was not well lighted, that Genest had occasion to walk there, and while so doing, in the exercise of reasonable care, fell into the hole and was injured. The servant in charge of those who opened the door knew that the defendants had given a general instruction to guard all dangerous openings, but he left this unguarded because he did not think a guard necessary under the circumstances.

After the injury Genest suffered from insane delusions. There was evidence that at about the time the release was taken he was "not right," that he was "crazy," that he was insane the day he brought the money home, that he was unable to sleep without drugs, that he saw ghosts and a big devil and used holy water to drive these things away, and that he was not capable of settling intelligently a case for personal injuries. There was also evidence that his insanity consisted solely of delusions relating to the death of his son and that he was capable of doing business. During the period covered by this conflicting evidence he executed a release for the sum of $63.60. His wife knew of the settlement and received the money from him, but understood it was only to pay for his time. The money had not been returned to the defendants, and the jury were instructed to deduct it from the damages assessed, if they found for the plaintiff.

The defendants' motions for a nonsuit and that a verdict be directed for them were denied, subject to exception. Subject to the defendants' exception, a witness testified that Dr. Dessaint, a witness called by the defendants, had pleaded guilty in the Berlin police court to a charge of intoxication.

*Henry F. Hollis* and *Alexander Murchie* (*Mr. Hollis* orally), for the plaintiff.

*Drew, Jordan, Shurtleff & Morris* (*Mr. Morris* orally), for the defendants.

PEASLEE, J. The defendants' exceptions to the procedure at the trial present no question of law. All the issues which the defendants make have been tried. The order in which they should be disposed of was to be determined by the presiding justice. It seemed to him that there should be but one trial. His decision of this question was final. *Meloon* v. *Read*, 73 N. H. 153; *Owen* v. *Weston*, 63 N. H. 599. The question whether equity has jurisdiction on the issues of release, and fraud in bringing the suit, is not raised by the case. There was no ruling on that question. The ruling was that the issues raised by the bill in equity should not be tried first, that all the issues in the bill and suit at law should be tried together, and that they should be tried by a jury. That it is the practice in this state to submit issues of fact arising in suits in equity to the determination of a jury is not denied. *State* v. *Saunders*, 66 N. H. 39; *Curtice* v. *Dixon*, 73 N. H. 393. The contention seems to be that the issues were too numerous to be intelligently considered by a jury. The presiding justice found against the defendants on this proposition, and his conclusion is not open to review here. *Mooar* v. *Mooar*, 69 N. H. 643, and authorities cited. The argument that if these issues in personal damage suits against corporations are to be disposed of by juries the defendants will always lose, does not raise a question within the jurisdiction of this court.

One duty owed to Genest as to transitory dangers was to provide suitable rules and regulations for his safety. *Smith* v. *Railroad*, 73 N. H. 325. In this case the master entrusted to a servant the duty of determining what places ought to be guarded. It could be found from the evidence that the place was left unguarded because this servant deemed a guard unnecessary. It was not left by careless oversight, but because of an error in judgment as to what was necessary to make the premises reasonably safe. The master knew, or ought to have known, that this place might be left open in the course of the work being done

there. It might be found that it should have been guarded, and that the master failed to give sufficiently explicit directions on the subject. In this respect the case differs from *Smith* v. *Railroad*, 73 N. H. 325, and *Hill* v. *Railroad*, 72 N. H. 518. It is here shown what directions were given. Their sufficiency is fairly questionable. Reasonable men might conclude that the general direction to guard all dangerous openings was not so explicit and definite a rule as the circumstances of the case required. Whether the master's duty extended beyond this, is a question not necessary to be considered here.

That there was evidence of Genest's mental incapacity when he executed the release is not denied. The contention is that some of the witnesses were contradicted by their previous sworn statements, and that the testimony of others was "beyond reason." The issue thus presented was one of fact, to be decided by the jury. Failure to return the money received was not necessarily fatal to the plaintiff's case. The jury having found that no valid settlement was made, there was no contract to rescind. *Hamel* v. *Company*, 73 N. H. 386, 389.

The admission of the evidence that the witness Dessaint had been convicted of drunkenness is now sought to be sustained on several grounds. It is urged that conviction of any crime may be put in evidence to discredit the witness; but the common law of this state is that only character for veracity can be used to impeach. *Sargent* v. *Wilson*, 59 N. H. 396, and cases cited.

The rule is thus stated in Wigmore on Evidence (*vol.* 2, *s.* 980): " If in a given jurisdiction general bad character is allowable for impeachment, then any offence will serve to indicate such bad character. If character for veracity only is allowable for impeachment, then only such specific offences may be used as indicate a lack of veracity-character." It is manifest the crime here shown is not of the latter class. *Hoitt* v. *Moulton*, 21 N. H. 586, 592.

The other grounds upon which the ruling is sought to be upheld all involve the proposition that such evidence should be admitted as tending to show that the witness' faculties have been dulled so that he may not observe correctly or remember accurately. If it were conceded that this contention was sound, it would not affect the result here. If the fact of intoxication is relevant and competent, it must still be shown by admissible evidence. The evidence admitted at the trial consisted of testimony of a third person to the admission made by Dr. Dessaint in a criminal proceeding against him. The plaintiff now offers to supplement this by producing the record of the judgment that Dessaint was guilty of the statutory offence of drunkenness. The judgment is not evidence, as against strangers to the record, of the facts in issue

between the parties to it. *Harrington* v. *Wadsworth*, 63 N. H. 400; *Dorr* v. *Leach*, 58 N. H. 18. Neither was Dessaint's admission, not made as a part of his testimony, competent evidence against this defendant. It was not offered to contradict the witness, for when the question was asked him it was excluded. The only theory upon which it could have been admitted is that it was positive evidence against this defendant of the fact Dessaint had theretofore admitted to be true. This is not the law in this jurisdiction. *Carpenter* v. *Hatch*, 64 N. H. 573, 576.

The testimony of Dessaint bore upon Genest's mental condition and upon the extent of his physical injuries. It did not relate to the issues of negligence. The verdict upon those issues may stand; but because of the error in the admission of the evidence just discussed, the verdict that Genest was incompetent to execute a release and the assessment of damages must be set aside.

*Exceptions sustained in part.*

All concurred.